By the Court,

Bronson, J.
Every sale or other transfer of . goods made with intent to defraud creditors, though valid as between the parties to the transaction, is utterly void as to creditors; and as a general rule they may act just as though no attempt had been made to dispose of the property. When they have obtained" a judgment and execution against the debtor, they may seize and sell the goods in the same way as though no transfer had been made. And so long as the debtor lives, a judgment and execution or some other legal process against him, is, in general, the only means by which the creditor can test the validity of the sale; but this rule does not always hold good after the debtor is dead. It is also true, for the most part, that an executor or administrator can only maintain such claims as the testator or intestate might have successfully asserted if living; but this rule is not without an exception, as I will presently show.
*184 • When a fraudulent vendee takes possession of the goods in the life time of the vendor, who afterwards dies leaving debts unpaid, it seems that the goods will, as to creditors, be deemed assets in the hands of the personal representatives of the deceased; and if so, the executor or administrator must of course have an action against the fraudulent vendee to recover the property. [Rob. on Fraud. Convey. 592, 3, citing Bethel v. Stanhope, Cro. El. 810.) But it is unnecessary to consider that question in this case, for although the defendant occasionally used the cattle, the possession remained in Barnes so long as. he lived, and the defendant took the property from the possession of the widow after the death of her husband.
The title of the plaintiff as. administrator took effect, by relation, from the death of the intestate, and he has the same right to maintain this action as though the letters of administration had been granted before the defendant took the goods. (Toll. Exec. 152, 3, ed. of 1834, and cases there cited.) The only question then to be considered is, whether the personal representative of a fraudulent vendor- who remained in possession until the time of his death, can, for the benefit of creditors, set up the fraud, and thus avoid the sale. I think he can, and that the court below erred in holding the contrary doctrine. All the books agree that the sale, though valid as between the parties to it, is utterly void as to creditors, and the only difficulty is as to the mode in which they shall come at their rights. At the common law they might have charged the defendant as executor de son tort, and this too, although there was a rightful executor or administrator. “ If a man makes a deed or gift of his goods in his life time by covin, to oust his creditors of their debts, yet after his death the vendee shall be charged for them.” (Bac. Abr. Fraud, (C.) 7th Bond, ed.) This doctrine was cited and approved by Butter, J. in Edwards v. Harben, (2 T. R. 585.) And the books show how he shall be charged, to wit, as executor de son tort. This point has been adjudged in several cases. (Hawes v. Leader, Cro. Jac. 270, and Yelv. 196, S. C. Ed *185 wards v. Harben, 2 T. R. 589. Osborne v. Moss, 7 John. R. 161. And see Bethel v. Stanhope, Cro. El. 810. Rob. Fr. Conv. 592, 5.) (a)
Some of the cases to which I have referred hold, that the only remedy of the creditor is to charge the fraudulent grantee as executor of his own wrong; and that the personal representative of the vendor cannot avoid the sale. It was so adjudged in Hawes v. Leader, and Osborne v. Moss. The statute only makes the sale void as against creditors; and not as to the vendor or his personal representative. But in Bethel v. Stan-hope, the fraudulent donor died in possession of the goods,. and it was said, that “ when the donee afterwards took them, it is a trespass against the administrator, for which he hath his remedy, and they are always assets in his hands.” Although this seems to be a reasonable rule, the case of Osborne v. Moss settled the question the other way in this court. It was there held, that the personal representative of the vendor could not set up the fraud to avoid the sale, and that the remedy of the creditor, was by charging the fraudulent vendee as executor de son tort.
But that is no longer the rule. It is now enacted, that “ no person shall be liable to an action as executor of his own wrong, for having received, taken or interfered with the property or effects of a deceased person; but shall be responsible as a wrong-doer in the proper action, to the'executors or general or special administrators of such deceased person, for the value of any property or effects so taken or received, and for all damages caused by his acts to the estate of the deceased.” (2 R. S. 449, § 17.) This statute takes away the remedy which the creditor before had against the fraudulent vendee, and transfers the action to the personal representative of the vendor. He may now sue, or controvert the validity of the sale in any other legal form, *186 where that course is necessary for the payment of the debts of the testator or intestate. In Dox v. Backentose, (12 Wend. 543,) it was remarked by Savage, Ch. J., that under our present statute, “ executors and administrators have a new character, and stand in a different relation from what they formerly did to the creditors of the deceased persons with whose estates they are entrusted. They are not now the mere representatives of their testator or intestate—they are constituted trustees, and the property in their hands is a fund to be disposed of in the best manner for the benefit of the creditors.” Whatever difficulty there might be in allowing an executor or administrator to set up the fraud, when considered as the mere representative of the testator or intestate, there can be none when he is regarded in the further capacity of a trustee for creditors, and is necessarily acting for their benefit. In this case, the whole of the intestate’s property, including the goods in question, is not more than sufficient for the payment of his debts. The administrator is not seeking to recover the property for the purpose of distributing it among the next of kin to the intestate, but for the purpose of paying debts. He stands in this action as the representative or trustee of the creditors, and as such he may well do, what the creditors before the late statute might have done for themselves in another form:—he may set up fraud in the transfer of the property from the intestate to the defendant; and if that fact shall be established, he will be entitled to recover. (Shields v. Anderson, 3 Leigh’s Rep. 729.) The court below erred in withdrawing that question from the jury.
The objection to swearing Mrs. Barnes, the widow of the intestate, when it did not appear what the defendant wished to prove by her, cannot be maintained. She was a competent witness to prove any fact which she did not learn from her former husband. The policy of the law only excludes her when her answer will be a violation of the confidence which existed between the husband and wife while the marriage relation continued. We had occasion to sonsider this question in Ratcliff v. Wales, (1 *187 Hill, 63.) That was an action of crim. con., and the wife, after the husband had obtained a divorce a vinculo, was called by him to prove her criminal connection with the defendant during the marriage, and we held she was a competent witness. The fact of which she was to speak could not have been entrusted to her by her husband, and her answer could therefore be no violation of confidence.
But the next exception was, I think, well taken. The widow was asked to disclose observations made to her by her husband concerning his affairs, and made too when, so far as appears, no other persons were present. What she knew, she had learned as matter of trust and confidence; and the peace and happiness of families will be best promoted by requiring that confidence to he kept forever inviolable. So long as the marriage con- , tinned, she clearly could not be called against her husband; and if she is allowed to speak after the marriage is at an end, either by divorce or death, it will tend to restrain that unlimited trust and confidence which ought always to exist between husband and wife. The leading case on this point is Monroe v. Twisleton, (Peake's Ev. by Norris, Appendix, 29; also reported in Peake's Add. Cas. 219.) The wife, after a divorce by act of parliament, was called against the husband to .prove a promise made by him during coverture, and she was- rejected by Lord Alvanley. He said, the wife was a competent witness to prove any fact arising after, the divorce, but not to prove a contract or any thing else which happened during coverture. In Doker, executor, v. Hasler, (Ryan & M. 198,) the husband was dead, and the widow was called as a witness against his executor. She was rejected by Best, C. J., who, although he had been overruled as counsel in Monroe v. Twisleton, said he was satisfied with the propriety of that decision, and thought the happiness of the marriage state required that the confidence between man and wife should be kept forever inviolable. This case is precisely in point. In the case at bar, the widow was called against the administrator of her0'deceased husband.
I am aware that Abbott, C. J. admitted the widow un *188 der similar circumstances in Beveridge v. Minter, (1 Carr. Payne, 364.) But the case of Monroe v. Twisleton was not mentioned on that occasion; and I think it much more probable that that decision was not recollected at the moment, than that the learned chief justice intended to overrule it, without so much as alluding to the fact that such a decision had ever been made. The case was put wholly on the ground that the widow had no interest on the side of the party by whom she was called.
Although there are nothing but nisi prius decisions upon this point,T think it sound policy to exclude the wife whenever she is called either against the husband or his representative, and asked to disclose any fact which came to her knowledge in consequence of the intimate relation which once existéd between herself and her husband.
Judgment reversed.(a)

 King v. Lyman, (1 Root's Rep. 104,) is contra, but anomalous. See in addition to the English and American authorities cited by Mr. Justice Bronson in the principal case, Dorsey v. Smithson, (6 Harr. & John. 61,) anil Howland and others v. Dews, (R, M. Charlt. Rep. 383.)

 This case was decided at the general term in October, 1841, but was not reported among the cases of that term by reason of its having been accidentally mislaid.